**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PATRICIA M. MOORE, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02:02cv1734 |
| | ) | |
| UNIVERSITY OF PITTSBURGH OF THE | ) | |
| COMMONWEALTH SYSTEM OF | ) | |
| HIGHER EDUCATION and UNIVERSITY | ) | |
| OF PITTSBURGH PHYSICIANS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

August 3, 2005

Presently before the Court for disposition is Plaintiff's MOTION FOR NEW TRIAL,

with brief in support (*Document Nos. 172 and 173*, respectively) and Defendants' RESPONSE

IN OPPOSITION TO PLAINTIFF'S MOTION FOR NEW TRIAL (*Document No. 176*).

For the reasons that follow, the Motion for New Trial filed by Plaintiff, Patricia M.

Moore, M.D., will be denied.

**BACKGROUND AND PROCEDURAL HISTORY**

This lawsuit arose out of the non-renewal of Plaintiff's employment contracts by the

Defendants, University of Pittsburgh of the Commonwealth System of Higher Education (the

"University") and University of Pittsburgh Physicians ("UPP").  Plaintiff claimed that both

Defendants discriminated against her because of her gender.  The Defendants denied Plaintiff's

claims of gender discrimination and contended that the decision not to renew her employment

contracts was based upon Plaintiff's failure during the course of her employment to have

established an external funding program to support her research projects and that she engaged in disruptive behavior which affected staff and patients during the performance of her clinical responsibilities in the neurology outpatient clinic.

Plaintiff contended that the stated reasons of Defendants for not renewing her employment contracts were a pretext or not the true reason for non-renewal which she contends was because of her sex, female.

Plaintiff also claimed that the University breached its employment contract with her by not naming her as the head of a division of neuroimmunology and by not recommending that her title be changed from "visiting professor" to "professor."

The University denied Plaintiff's claims of breach of contract and asserted that Plaintiff did not have a contractual right to be named as head of a division of neuroimmunology or to have her title changed.

The case was originally assigned to the Honorable Gary L. Lancaster of this Court, who referred the matter on October 17, 2002, to United States Magistrate Judge Robert C. Mitchell for pretrial proceedings in accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(A) and (B), and subsections 3 and 4 of Local Rule 72.1 for Magistrate Judges.

On June 27, 2003, the case was transferred from Judge Lancaster to this member of the Court.  On September 24, 2004, Magistrate Judge Mitchell referred the case back to the undersigned for trial.

A jury trial commenced on March 15, 2005, and concluded with a verdict in favor of Defendants on April 6, 2005.

Plaintiff has filed a timely post trial motion for new trial in which she argues under Federal Rule of Civil Procedure 59 for an Order to set aside the verdict and the judgment and grant a new trial.

Not surprisingly, Defendants strenuously argue that the motion for new trial should be denied.  The matter is ripe for disposition.

### STANDARD OF REVIEW

Pursuant to Rule 59 of the Federal Rules of Civil Procedure:

> A new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . .

Fed. R. Civ. P. 59(a).

A motion for a new trial may be sought on the grounds that the verdict is against the weight of the evidence, that the damages are excessive, or that the district court made substantial errors in the admission or rejection of evidence or in its instructions to the jury.  *See Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940).  Generally, the decision whether or not to grant a new trial "is committed to the sound discretion of the district court." *Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 752 F.2d 802, 812 (3d Cir. 1984).  The district court's latitude varies, however, depending upon the type of error alleged.  *Klein v. Hollings*, 992 F.2d 1285, 1289-90 (3d Cir. 1993).   Its latitude "is broad when the reason for interfering with the jury verdict is a ruling on a matter that initially rested within the discretion of the court," such as evidentiary rulings.  *Id*.  The district court's discretion is more limited, however, when the type

3

of error alleged is that the jury's verdict is against the weight of the evidence.  In such a

situation, a new trial should be awarded "only when the record shows that the jury's verdict

resulted in a miscarriage of justice or when the verdict, on the record, cries out to be overturned

or shocks [the] conscience."  *Id.*   The Court of Appeals for the Third Circuit has observed that

"[t]his limit upon the district court's power to grant a new trial seeks to ensure that a district

court does not substitute its 'judgment of the facts and the credibility of witnesses for that of the

jury.' "  *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 211 (3d Cir. 1992) (citation

omitted).

**DISCUSSION**

Plaintiff asserts fourteen (14) bases for a new trial, all of which the Court finds to be

without merit.

1.      The testimony of former employees about "alleged negative encounters they had with
        the Plaintiff."

Plaintiff's first alleged assignment of error is that the Court erred in admitting

evidence of "other alleged bad acts of the Plaintiff" in violation of Federal Rule of Evidence

404(b), when it permitted evidence by staff employees about "alleged negative encounters they

had with Plaintiff."  The Court will summarily deny this contention.

One critical component of the defense of Defendants was that Plaintiff's employment

contracts were not renewed because Plaintiff had engaged in disruptive behavior toward many

people, particularly staff employees at the neurology outpatient clinic where Plaintiff treated

many patients.  In support of their defense, Defendants presented testimony from a number of

staff employees regarding the contentiousness of Plaintiff with the neurology outpatient clinic

staff on her clinic days throughout her employment.

4

Federal Rule of Evidence 404(b) provides that "[e]vidence of <u>other</u> . . . acts is not admissible to prove the character of a person in order to show action in conformity therewith. . . ."  However, the evidence adduced from the staff employees is not subject to the restriction of Rule 404(b) because the actions of Plaintiff to which these employees testified were in regard to the articulated reason(s) for the adverse employment action taken by the Defendants.  The acts/actions about which the employees testified were not "other acts;" rather, these were <u>the</u> substantive acts/actions upon which Defendants based their decisions not to renew their employment contracts with Plaintiff.  Accordingly, Plaintiff's first assignment of error is denied.

2.        <u>The Vanderbilt University termination letter</u>

Plaintiff's second alleged assignment of error is that the Court erred in admitting into evidence a letter from Vanderbilt University through which an earlier employment contract of Plaintiff was not renewed.   Plaintiff contends that the letter "was purely hearsay and was never introduced by its writer and the Defendants offered the document to prove the truth of the matter asserted therein."  Pl's Br. at 2.

Contrary to Plaintiff's objections, the document was not hearsay and was not introduced to prove the truth of the matter asserted, but rather to impeach the testimony of Plaintiff.  As counsel will recall, the Court had previously granted Plaintiff's Motion in Limine to exclude evidence of Plaintiff's lack of funding and difficulties with collegial interaction while employed at Vanderbilt University.  The Court found that Plaintiff's employment at Vanderbilt University was too remote in time to be relevant to the issues of this lawsuit. *See* Memorandum Order of Court, March 11, 2005.

However, on direct examination, counsel for Plaintiff elicited testimony from Plaintiff that "[t]he department at Vanderbilt would have been delighted had I stayed there with my ROI [grant], but I was eager to move to a place where I thought there would be a larger group of people with whom I could work." Trial Transcript, 3/16/05, at 85-86. Plaintiff's testimony clearly opened the door to cross-examination and potential impeachment with regard to the circumstances under which her employment at Vanderbilt came to an end.

On cross-examination, Defendants elicited that Plaintiff had received a formal letter notice from Vanderbilt University that her contract would not be renewed. Plaintiff authenticated the Vanderbilt University letter during her testimony and acknowledged having received it. The Court finds that the Vanderbilt University letter was not hearsay under Federal Rule of Evidence 801(c) because Defendants offered it to prove that Plaintiff had received notice that her contract at Vanderbilt University was not being renewed, not for the truth of the matter asserted. Accordingly, Plaintiff's second assignment of error is denied.

3.      Patient Testimony About Favorable Experiences with Plaintiff.

Plaintiff's third alleged assignment of error is that the Court erred when it excluded patient testimony about their favorable experiences with Plaintiff. In an attempt to rebut Defendants' contention that their decision not to renew Plaintiff's contracts was related to her poor interactions with staff, patients and their families, Plaintiff sought to introduce the testimony from a number of former patients who would have testified that Plaintiff had treated them "with dignity and respect and did not have negative or unseemly interactions with them or their families." Pl's Br. at 2.

6

The Court excluded such testimony on the basis that it was not relevant and, thus, was not admissible under Rule 402.  At trial, Defendants did not contend nor attempt to prove that the medical care and/or treatment which Plaintiff rendered to patients was in any way below the acceptable standard of care.  Plaintiff argued during trial, as she does now, that the exclusion of such patient satisfaction testimony was prejudicial.  The arguments now raised by Plaintiff on this issue are identical to the arguments she raised during trial.  The Court has previously considered these arguments and is not persuaded that it should change its decision.  Therefore, these arguments do not warrant further analytical discussion and Plaintiff's third  assignment of error is rejected by the Court.

4.      <u>Testimony Regarding Plaintiff's Alleged Visual Disability</u>

Plaintiff's fourth alleged assignment of error is that the Court erred when it limited Plaintiff from questioning Dr. Steven DeKosky about any communication he may have had with a staff worker, Melanie Mielo, regarding Plaintiff's alleged visual impairment problem.  The Court sustained Defendants' objection based upon the fact that Ms. Mielo's comment was apparently made when she was being questioned about the allegations contained in an EEOC Charge filed by Plaintiff.  The Court ruled that any comment made by Ms. Mielo was a statement made in anticipation of litigation and in connection with the investigation of the EEOC Charge.

In addition, the Court finds and rules that since this alleged disability claim of Plaintiff did not survive summary judgment, any questions relating to the awareness of Ms. Mielo regarding Plaintiff's alleged visual disability were not material to the trial.   For these

reasons, the Court continues to believe that it properly sustained the objection of Defendants to

Plaintiff's attempt to question Dr. DeKosky about his alleged communication with Ms. Mielo

and Plaintiff's fourth assignment of error is denied.


5.       Evidence From the National Institute of Health (NIH)

        Plaintiff's fifth assignment of error is that the Court erred by "creating an evidentiary

imbalance with regard to information from the NIH."  Specifically, Plaintiff argues that an

evidentiary imbalance was created when the Court "allowed the defense to present evidence by

way of hearsay that the University of Pittsburgh ranked high (No. 8) on NIH grants," but refused

to allow Plaintiff to "present evidence that the NIH had issued requests for applications (RFA's)

for grant applications on neuropsychiatric effects on Lupus (the Plaintiff's proposed area of

research). . . ."

        Initially, the Court notes that prior to trial it granted Defendants' Motion in Limine to

Preclude Plaintiff from Introducing Hearsay Statements Allegedly Made by the NIH.  *See*

Memorandum Order of Court, March 11, 2005.  At that time, the Court noted the following:

> Plaintiff has consistently argued throughout this litigation that the
> Defendants' proffered reason for the non-renewal of her contract (i.e.,
> lack of NIH funding) is pretextual because she was planning on
> resubmitting the May 2000 application and she had been told by
> employees of NIH that there was an interest in her proposal and a
> likelihood of funding.

> The Court ruled that should Plaintiff desire to offer evidence during the trial

regarding statements allegedly made to her by representatives of the NIH, she must present those

witnesses to testify at trial. Significantly, Plaintiff did not present any representatives from NIH

as witnesses at the trial.

8

Further, the Court finds that the testimony at trial that the University of Pittsburgh was highly ranked based on its level of NIH funding is completely unrelated to the testimony Plaintiff wanted to present regarding the likelihood of her resubmitted grant application being funded.  Thus, the Court rejects Plaintiff's fifth assignment of error and finds that there was no "evidentiary imbalance" which resulted in any prejudice to Plaintiff.

6.      Testimony of Dr. Roger Simon

Plaintiff's sixth alleged assignment of error is that "the Court erred by making uneven rulings with respect to opinions that could be rendered by Dr. Roger Simon." Specifically, Plaintiff argues that "[w]hile Dr. Simon was barred from saying that a non-renewal amounted to a black mark on a job applicant's record on direct examination, he was permitted over objection to say on cross-examination that the report card for a research professor in neurology would be based on peer reviewed articles and NIH funding."  Pl's Br. at 3-4.

First, the Court notes that although Dr. Simon's testimony was proffered by Plaintiff as being "expert" testimony in the area of academic medical careers, Plaintiff had neither listed Dr. Simon as an expert witness in her pre-trial statement nor provided an expert report.  Thus, the Court prohibited Dr. Simon from offering his "expert" opinion that an employment contract non-renewal is a "black mark" on an academic physician's record.

Assuming, *arguendo,* however that the Court's ruling was erroneous, the Court finds and rules that Plaintiff was not prejudiced because the jury <u>did</u> hear evidence of the effect that the contract non-renewal allegedly had on Plaintiff's career, *to wit:*  Plaintiff was permitted to

testify at length about the effect of non-renewal when she described her inability to obtain new employment.

Plaintiff also argues that the Court erred when it allowed Dr. Simon to testify on cross-examination, over her objection, that "report cards" for academic physicians are the number of peer-reviewed publications they have authored and the amount of NIH funding they have obtained.  Contrary to Plaintiff's argument, the trial transcript does not reflect that counsel for Plaintiff objected to Dr. Simon's cross-examination testimony on this subject.  *See* Trial Transcript, March 23, 2005, at 139-51.

For these reasons, the Court rejects Plaintiff's sixth alleged assignment of error.

7.      <u>Testimony of Rasheeda Davis</u>

Plaintiff's seventh alleged assignment of error is that the Court erred "by allowing witness Rasheeda Davis to testify on cross-examination over Plaintiff's objection as to her having told Plaintiff's counsel that Plaintiff was 'nasty'."  Pl's Br. at 4.  Plaintiff contends that this testimony was hearsay and highly prejudicial and unfair to Plaintiff.

Federal Rule of Evidence 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  There is absolutely no indication in the record that Defendants asked the question to establish that Plaintiff was "nasty;" rather, Ms. Davis was a witness called by the Plaintiff and Defendants cross-examination was directed to dispel the impression that Ms. Davis was a "supporter" of Plaintiff.

10

Plaintiff also objects to this testimony because "Plaintiff's counsel could not testify in rebuttal since he was the attorney of record." Pl's Br. at 4. While this is certainly true, Plaintiff appears to overlook the fact that her counsel did indeed cross-examine Ms. Davis on this exact point and specifically asked her whether it was not true that she had told Mr. Lieber that Plaintiff was "snippy or snappy" rather than "nasty."

The Court is not persuaded that it should change its ruling on this issue and finds Plaintiff's seventh alleged assignment of error to be without merit.


8.      <u>Testimony Regarding the Likelihood of Plaintiff's Grant Being Funded.</u>

Plaintiff's eighth alleged assignment of error is that the Court "erred by allowing defense witnesses to give an opinion on the likelihood of Plaintiff's grant being funded but not Plaintiff's witnesses." Pl's Br. at 4. The Court is baffled by this objection as it cannot find any record evidence that any defense witnesses were permitted to give any such opinion(s).

Dr. DeKosky did not testify that he thought the likelihood of funding of Plaintiff's grant re-application was low; rather he testified that the likelihood of Plaintiff's grant proposal being funded was not a consideration in his decision to not renew her employment contract. On cross-examination, Dr. DeKosky testified that he had read the grant application and believed it to be of poor quality; however, on re-direct, Dr. DeKosky clarified that he had read the grant application during the course of this litigation, <u>not</u> during the period that Plaintiff was employed by Defendants and that it was not a factor in his decision to not renew Plaintiff's employment contract.

Plaintiff further argues that the Court erred by prohibiting "Plaintiff's witnesses Drs. Timothy Wright, Kent Kwoh and Roger Simon from testifying as to the quality of the grant and the likelihood of receiving NIH funding." Without doubt, the Court excluded the opinion testimony of Drs. Wright, Kwoh and Simon regarding the likelihood of NIH grant funding because (i) such testimony was irrelevant under Rule 402 insofar as none of these witnesses were decisionmakers and (ii) such testimony was excludable under Rule 602 due to the lack of personal knowledge of these witnesses. Neither Dr. Kwoh nor Dr. Wright were physicians in the same department (neurology) as Plaintiff and Dr. Simon was not on the University faculty at the time Plaintiff was working on the grant application and he had absolutely no involvement whatsoever in Plaintiff's proposed resubmission of the grant application. The Court ruled during trial, and continues to find, that these witnesses had no sound basis beyond speculation to opine that Plaintiff's grant re-application stood a good likelihood of being funded by the NIH.

The Court permitted, however, testimony that Plaintiff had taken the reviewers comments seriously into account, had made their suggested changes, and had consulted with Drs. Timothy Wright and Kent Kwoh regarding the grant application and resubmission in an effort to improve it.

Accordingly, the Court finds Plaintiff's eighth assignment of alleged error to be without merit.


9.      Curative Instruction About "Sexual Harassment"

Plaintiff's ninth assignment of error is that the Court erred when it gave a curative instruction following closing arguments that a reference made by counsel for Plaintiff during

12

closing which pertained to "sexual harassment" was not proper.    In the instant lawsuit, Plaintiff never asserted a sexual harassment claim against Defendants; rather, Plaintiff claimed that Defendants did not renew her contract because of her sex, female.

Prior to trial, the Court ruled that evidence which pertained to an alleged claim of sexual harassment made against another doctor employed by Defendants and made more than a year after Plaintiff's employment with Defendants had terminated was inadmissible because it was irrelevant and prejudicial under Federal Rule of Evidence 403.

Admitted into evidence, however, was the deposition testimony of Dr. Lawrence Wechsler, which described a scenario in which a male physician was accused of making an improper advance to a female nurse.  Dr. Wechsler did not testify that this male physician was accused of "sexual harassment."

During his closing argument, however, Plaintiff's counsel told the jury that a male physician had been accused of "sexual harassment" and not terminated.  Counsel for Defendants objected immediately after the closing and requested a curative instruction to the jury that "sexual harassment" was never an issue in this case.

Not surprisingly, Plaintiff's counsel objected strenuously and argued then, as he does now, that reference to "sexual harassment" was permissible because in "common parlance" this type of behavior would be described as sexual harassment and the "inferences that the Plaintiff's counsel used in his closing argument arose naturally from the evidence."  Pl's Br. at 4-5.  The Court disagreed with Plaintiff's argument at the time of trial, and nothing presented in the Motion for New Trial persuades the Court that it should change its previous ruling.

Accordingly, Plaintiff's ninth assignment of error will be denied.

10.        Curative Instruction About "Direct Evidence"

Plaintiff's tenth alleged assignment of error is that the Court erred when it gave a curative instruction following closing arguments that there was no direct evidence of discrimination in this case.

During his closing, counsel for Plaintiff argued that a letter from Dr. Greenburg, which was admitted into evidence at trial, and "the overly sexist remarks by decision-maker Dr. Robert Moore" constituted "direct evidence" of sex discrimination.

The law of this circuit instructs that for evidence to constitute "direct evidence" of unlawful discrimination it must consist of "conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude." *Starceski v. Westinghouse Electric Corp.*, 54 F.3d 1089, 1096 (3d Cir. 1995).

The statements contained in the letter written by Dr. Greenburg do not constitute direct evidence of sex discrimination for two reasons, *to wit*:  (i) Dr. Greenburg was not a decisionmaker in this case and (ii) the statements in his letter do not relate to the matter of renewal of Plaintiff's employment contracts.  Thus, following the instructions of our Court of Appeals, the letter from Dr. Greenburg cannot be described as "direct evidence" of discrimination.

Plaintiff also now argues that the "overtly sexist remarks" by Dr. Robert Moore constitute "direct evidence" of sex discrimination.[1]   In a pre-trial motion, the Court ruled that Dr. Robert Moore was a decisionmaker during a significant portion of the time Plaintiff was

---

[1]        The Court notes that Defendants did not address the arguments of Plaintiff which related to comments made by Dr. Robert Moore.

employed by the Defendants and that the atmosphere in the department during his chairmanship was relevant to the issues of this lawsuit.  *See* Memorandum Order of Court, at 14.  However, there was no evidence whatsoever at trial that any of Dr. Robert Moore's allegedly "overtly sexist remarks" were ever made or directed toward Plaintiff nor did any such alleged remarks relate to the matter of renewal of Plaintiff's employment contracts.

Plaintiff has argued nothing new in her Motion for New Trial which persuades the Court that it should change its previous ruling.  Accordingly, Plaintiff's tenth alleged error of assignment will be denied.

11.      Curative Instruction About "Stealing"

Plaintiff's eleventh alleged error of assignment is that the Court erred when it gave a curative instruction after closing arguments that stealing was not an issue in this lawsuit.

Prior to trial, the Court granted a Motion in Limine filed by Defendants to exclude evidence of UPMC's alleged billing problems with Medicare reimbursements which were unrelated to the issues of this case.  The Court found that such evidence should be precluded under Federal Rule of Evidence 403 because the probative value of such evidence was substantially outweighed by the danger of unfair prejudice and confusion of the issues.  *See* Memorandum Order of Court, at 10.

However, during trial, the Court permitted Plaintiff's counsel to question Susan Stokes, a former neurology Department Administrator, about billing irregularities and problems with the billing practices of  physicians.  Ms. Stokes testified about an incident in which the patients of Dr. Lawrence Wechsler were inadvertently billed for services that were covered by a

study.  Ms. Stokes, however, did not testify that the incident of double billing was intentional or illegal; rather, she testified that it was merely a billing error that was corrected.

During his closing argument, counsel for Plaintiff described the billing error incident as "tantamount to stealing."  The Court believed then, as it continues to believe, that the statement made by Plaintiff's counsel was a gross mischaracterization of the evidence which necessitated correction and clarification.  Accordingly, the Court gave a curative instruction to the jury in which it informed the jury that "stealing" was not an issue in this lawsuit.  Plaintiff's eleventh alleged assignment of error will be denied.

12.     Exclusion of Patient Surveys

Plaintiff's twelfth alleged assignment of error is that the Court erred when it refused to admit into evidence surveys of patient complaints regarding the neurology clinic.  Plaintiff's argument will be summarily rejected.

The Court permitted counsel for Plaintiff to question numerous witnesses about the various complaints received from clinic patients.  However, the Court did not allow the surveys of the patient complaints to be admitted into evidence for two reasons.  First, the surveys were prepared by an unidentified person and contained patient answers made in response to form questionnaires.  Additionally, and perhaps even more importantly, the summaries were not complete - they included only three or four pages of a document which was in excess of twelve pages.

16

The surveys were excluded from evidence based on their hearsay nature and incompleteness.   Plaintiff has presented no new argument which persuades the Court to change its prior ruling.  Accordingly, Plaintiff's twelfth alleged assignment of error will be denied.

13.      Precluding of Proposed Opinion Testimony by Dr. Timothy Wright

Plaintiff's thirteenth alleged assignment of error is that the Court erred when it precluded Dr. Timothy Wright from testifying about the length of time necessary for a physician to establish an externally funded research program.  The Court excluded such testimony because it was not relevant - Dr. Wright was not a decision maker in this matter nor was he a member of the Department of Neurology.  Further, the term and other conditions of Plaintiff's employment were clearly set forth in her employment contract with Defendants which was not renewed. Thus, Dr. Wright's opinion on whether Plaintiff was given enough time to establish a funded research program was not relevant to the issues at trial.

For these reasons, Plaintiff's thirteenth alleged error of assignment will be denied.

14.      The "Cumulative Impact"

Plaintiff's fourteenth and last alleged assignment of error is the rather vague argument that all of the Court's errors "in combination also deprived Plaintiff of a fair trial." Pl's Br. at 6.  As explained *supra,* the Court does not believe that its trial rulings which either allowed or excluded the questioned evidence were erroneous.  However, assuming *arguendo,* that such were erroneous, the Court finds and rules that Plaintiff has failed to establish that such error was so prejudicial that refusal to grant a new trial would be "inconsistent with substantial

justice." Federal Rule of Civil Procedure 61.[2]  A motion for a new trial on the basis of alleged

trial error requires two inquiries: whether an error was in fact made; and whether that error was

so prejudicial that refusal to grant a new trial would be "inconsistent with substantial justice."

Fed. R. Civ. 61.  With respect to evidentiary error, the test under the second inquiry is that a new

trial must be granted unless "it is highly probable that [the erroneous ruling] did not affect the

[objecting party's] substantial rights." *McQueeney v. Wilmington Trust Co.,* 779 F.2d 916, 928

(3d Cir.1985); *cf.* Fed.R.Evid. 103(a).[3]

---

[2]      Federal Rule of Civil Procedure 61 provides as follows:

> **Rule 61. Harmless Error**
> No error in either the admission or the exclusion of evidence and no error or
> defect in any ruling or order or in anything done or omitted by the court or
> by any of the parties is ground for granting a new trial or for setting aside a
> verdict or for vacating, modifying, or otherwise disturbing a judgment or
> order, unless refusal to take such action appears to the court inconsistent
> with substantial justice. The court at every stage of the proceeding must
> disregard any error or defect in the proceeding which does not affect the
> substantial rights of the parties.

[3]      Federal Rule of Evidence 103(a) provides as follows:

> **(a) Effect of Erroneous Ruling.**--Error may not be predicated upon a ruling which
> admits or excludes evidence unless a substantial right of the party is affected, and
>> **(1) Objection.** --In case the ruling is one admitting evidence, a timely
>> objection or motion to strike appears of record, stating the specific ground
>> of objection, if the specific ground was not apparent from the context; or
>>
>> **(2) Offer of Proof.** --In case the ruling is one excluding evidence, the
>> substance of the evidence was made known to the court by offer or was
>> apparent from the context within which questions were asked.
>
> Once the court makes a definitive ruling on the record admitting or excluding
> evidence, either at or before trial, a party need not renew an objection or offer of
> proof to preserve a claim of error for appeal.

18

The jury was presented with evidence that the employment contracts between Plaintiff and Defendants were not renewed because she failed to establish an external funding program to support her research projects and that she engaged in disruptive behavior which affected staff and patients during the performance of her clinical responsibilities in the neurology outpatient clinic.   While Plaintiff argued that these stated reasons were pretextual, the jury chose to believe the Defendants.  The Court cannot find that it is highly probable that the alleged "erroneous" rulings affected the substantial rights of Plaintiff.  *McQueeney*, 779 F.2d at 928.  Thus, Plaintiff's fourteenth alleged assignment of error will be denied.

## CONCLUSION

For the hereinabove stated reasons, the Court finds there is a reasonable basis from the evidence on the record for the jury to have found that Plaintiff's employment contracts were terminated for legitimate, non-discriminatory reasons.

An appropriate Order follows.

McVerry, J.

cc:        James B. Lieber, Esquire
                Lieber & Hammer
                5528 Walnut Street
                Pittsburgh, PA 15232

                Martha Hartle Munsch, Esquire
                mmunsch@reedsmith.com

                Colleen A. Zak, Esquire
                Reed Smith
                435 Sixth Avenue
                Pittsburgh, PA 15219-1886

                Susan W. Rabenstein, Esquire
                University of Pittsburgh
                1710 Cathedral of Learning
                Pittsburgh, PA 15260

                John J. Myers, Esquire
                jmyers@eckertseamans.com

                Christine M. Gass, Esquire
                cgass@eckertseamans.com